

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:AP
F. #2021R00052

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 16, 2023

By ECF

The Honorable Brian M. Cogan
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Powerful Williams
              Criminal Docket No. 21-109 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in advance of the sentencing of the defendant Powerful Williams, currently scheduled for March 23, 2023. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 57 to 71 months' imprisonment.

    I.    Background

        A.    The Offense Conduct

      On January 6, 2021, the defendant was arrested by the New York City Police Department ("NYPD") on an investigation card, which charged the defendant with criminal contempt in the first degree, for violating an order of protection which had previously been issued in Brooklyn criminal court. See Presentence Investigation Report ("PSR") dated January 3, 2022 at ¶ 5. The NYPD officers who apprehended the defendant searched him for potential weapons before transporting him to the 90th precinct for arrest processing. Id. Once at the police precinct, the defendant was additionally searched twice before being transported to Brooklyn Central Booking ("BCB"). Id. BCB is located inside of the Brooklyn criminal courthouse and is the first stop for detained persons prior to seeing a judge for arraignment on criminal charges.

      The defendant was escorted from a pre-screening holding cell at BCB, through a metal detector, to a search area. Id. ¶ 6. As the defendant walked through the metal detector, an alarm sounded indicating the presence of metal. Id. A police attendant assigned to the search

area began to search the defendant and felt a bulge near the front of the defendant's waistband. Id.  The officers who transported the defendant to BCB entered the search area and the defendant put his hands down the front of his waistband in a motion that simulated him adjusting himself. Id.  One of the officers removed the defendant's hands from his waistband, felt along the front of the defendant's waist and detected an object in the front of the defendant's waist near his groin. Id.  The officer reached in the front of the defendant's waistband and removed a Derringer model .38 caliber special, which was loaded with two cartridges.  Id.  The firearm was wrapped in the bottom of the defendant's t-shirt and tucked into the defendant's pants underneath a hooded sweatshirt he was wearing.  Id.

      B.      Charges and Plea

On February 26, 2021, a grand jury sitting in the Eastern District of New York returned a single count indictment charging the defendant with being a felon-in-possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g).  See ECF No. 1.  On July 22, 2022, the defendant pleaded guilty before United States Magistrate Judge Ramón E. Reyes Jr. to the sole count of the indictment pursuant to a plea agreement.[1]

II.      Guidelines Analysis

In the plea agreement, the government set forth that the defendant's base offense level is 24 pursuant to U.S.S.G. § 2K2.1(a)(2).  The United States Probation Department ("Probation") likewise determined that the defendant's base offense level is 24 because he committed the offense in this case after obtaining two felony convictions for a "crime of violence."  See PSR at ¶ 11.  Specifically, on May 20, 2010, the defendant pled guilty to first-degree robbery, in violation of New York Penal Law ("N.Y.P.L.") § 160.15 and was sentenced to five and-a-half years' imprisonment concurrent to a May 20, 2010 conviction of second-degree attempted murder, in violation of N.Y.P.L. § 110/125.25(1), in which he was sentenced to five and-a-half years' imprisonment.[2]  Id. at ¶¶ 23-24.

    A.    The Defendant's Conviction for Second-Degree Attempted Murder in the Second Degree in New York is a "Crime of Violence"

In interpreting United States v. Taylor, 142 S. Ct. 2015 (2022), the defendant contends that his prior conviction for second-degree attempted murder under New York law no longer qualifies as a "crime of violence" for purposes of the Guidelines, and thus that his base offense level is 20 instead of 24.  See Defense Sentencing Memorandum, ECF No. 27.

The Second Circuit has held unequivocally that attempted murder under New York law is categorically a crime of violence for purposes of § 924(c).  See United States v.

---

[1] On August 23, 2022, this Court accepted the Defendant's guilty plea.  See ECF No. 17.

[2] Additionally, on June 30, 2014, the defendant pled guilty to attempted promoting of prison contraband in the first degree, in violation of N.Y.P.L. § 110/205.25, and was sentenced to one and-a-half year to three years' imprisonment.  See PSR at ¶ 25.

2

Pastore, 36 F.4th 423, 429 (2d Cir. 2022); United States v. Laurent, 33 F.4th 63, 89 (2d Cir. 2022); United States v. Sierra, 782 Fed. Appx 16, 20 (2d Cir. 2019); United States v. Praddy, 729 Fed. Appx. 21, 21, 24 (2d Cir. 2018); United States v. Scott, 681 Fed. Appx. 89, 95 (2d Cir. 2017).

In urging this Court to reach a different result, the defendant asserts that the Supreme Court's decision in United States v. Taylor, 142 S. Ct. 2015 (2022), effectively abrogated Pastore. For the reasons described below, the defendant is wrong.

The Supreme Court's decision in Taylor resolved only one issue: whether an attempted Hobbs Act robbery constitutes a "crime of violence" under the Elements Clause of 18 U.S.C. § 924(c). See 142 S. Ct. at 2016 ("Does attempted Hobbs Act robbery qualify as a 'crime of violence' under 18 U.S.C. § 924(c)(3)(A)?"). In deciding this issue, the Supreme Court concluded that attempted Hobbs Act robbery is not categorically a crime of violence because a defendant may, under certain circumstances, be found guilty of that crime absent the use, attempted use, or threatened use of force. See id. at 2025-26.

At its core, the Taylor Court held that because attempted Hobbs Act robbery includes instances where a defendant could attempt to threaten violence but not succeed or even get to a stage where he was threatening force, it could not satisfy the Elements Clause. For instance, the Court reasoned, a defendant may be guilty of attempted Hobbs Act robbery if he intends to rob a store and enters the store with a threatening note that he knows to be a bluff, even if he never manages to deliver the threatening note. See id. at 2021.

Attempted Hobbs Act robbery, which could rest on an attempt to threaten theory, stands in contrast to other statutes whose completed commission requires the actual use of force and whose attempted commission necessarily requires the "attempted use of force." See 18 U.S.C. § 924(c)(3)(A). Those latter statutes still qualify under the Elements Clause. Indeed, if the phrase "attempted use of force" in the Elements Clause does not reach attempts to commit crime whose completion would require force, like attempted murder, that phrase would be rendered a nullity.

Neither the holding nor the logic of Taylor abrogates the Second Circuit's holding in Pastore that attempted murder constitutes a crime of violence under the Elements Clause of 18 US.C. § 924(c). A person is guilty of second-degree murder in New York when he has the "intent to cause the death of another person, [and] he causes the death of such person or of a third person." N.Y.P.L. § 125.25(1). Murder, unlike Hobbs Act robbery, cannot be committed by threat and always requires the use of physical force. See Pastore, 36 F.4th at 429. ("There is no question that intentionally causing the death of another person involves the use of force."); United States v. Casleman, 572 U.S. 157, 169 (2014) ("[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force."); United Sates v. Scott, 990 F.3d 94, 98-99 (2d Cir. 2021) (en banc) (holding that first degree manslaughter under New York law,

"a homicide crime second only to murder in its severity," is categorically a crime of violence even if committed via omission).

An attempt under New York law requires both the intent to commit the underlying crime and "an action taken by an accused so near [to] the crime's accomplishment that in all reasonable probability the crime itself would have been committed." Pastore, 36 F.4th at 429 (quoting United States v. Tabb, 949 F.3d 81, 86 (2d Cir. 2020)). Thus, because the completed crime of murder has as an element the use of force and attempted murder categorically requires that a person take a substantial step toward the use of force, the Second Circuit has held "there can be no doubt that attempt to commit a second-degree murder under New York law is itself categorically a crime of violence." Id. at 430; see also Tabb, 949 F.3d at 83-86.

Indeed, even the Fourth Circuit, which held that attempted Hobbs Act robbery is not a crime of violence in the decision affirmed by the Supreme Court, also recognized that "where a crime of violence requires the use of physical force – as is usually the case – the categorical approach produces the opposite outcome: because the substantive crime of violence invariably involves the use of force, the corresponding attempt to commit that crime necessarily involves the attempted use of force." United States v. Taylor, 979 F.3d 203, 209 (4th Cir. 2020), aff'd, 142 S. Ct. 2015 (2022). Thus, as properly understood, Taylor simply does not apply to New York attempted murder.

Accordingly, both of the defendant's 2010 convictions under New York law are a "crime of violence" under the Guidelines and his base offense level should be 24.

B. The Applicable Guidelines Calculation

The government agrees with Probation's calculation of the defendant's offense level as set forth below:

| | | |
|---|---|---|
| Base Offense Level (§ 2K2.1(a)(2)) | | 24 |
| Less: | Acceptance of Responsibility (§§ 3E1.1(a), 3E1.1(b)) | -3 |
| Total: | | 21 |

PSR ¶¶ 11-20. The total offense level is 21, which, based on a Criminal History Category of IV, carries a Guidelines imprisonment range of 57 to 71 months. Id. ¶ 61.

III.     A Guidelines Sentence is Appropriate

    a. Legal Standard

A "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. 50 (citation and footnote omitted).

Title 18, United States Code, § 3553(a) provides that, in imposing a sentence, a court shall consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed—

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; [and]

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, the Court should first calculate the applicable Guidelines range, and then apply the § 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

    b. The 3553(a) Factors

The government submits that a sentence in the Guidelines range of 57 to 71 months' incarceration is sufficient but not greater than necessary to meet the objectives of sentencing under the circumstances in this case.

5

Initially, the defendant's criminal conduct was extraordinarily serious as it was dangerous to other prisoners, officers and the entire judicial community. BCB is located inside of one of New York State's busiest and most populous courthouses. Even during limited pandemic operations, in addition to other inmates inside of BCB, numerous officers, courthouse staff, members of the bar and judicial officers interact with a prisoner brought to the courthouse for arraignment on charges.

All parties involved in our system of justice are entitled to be physically safe and secure; indeed, the fair and efficient administration of justice requires it. Further, should the .38 caliber special the defendant carefully secreted in his groin area have continued to go undetected, the defendant was well primed to introduce his weapon into the prison population within the New York City Department of Corrections were bail to be set on his underlying charges—as the criminal court judge saw fit to do. The danger posed by a loaded firearm smuggled into any of these locations is immeasurable.

Additionally, a Guidelines sentence would also consider the defendant's history and personal characteristics. Two of the defendant's prior criminal convictions, attempted murder and robbery, are notable for their violent characteristics. Further, the defendant committed the current crime while on pretrial release for another offense, a menacing with yet another firearm, in violation of N.Y.P.L. § 120.14(1). Accordingly, a sentence within the Guidelines range (a) would protect the public from yet further crimes of the defendant; (b) may serve to begin a process of deterring the defendant from continuing to commit more serious crimes; and (c) would provide deterrence more generally to those who would consider engaging in conduct that would endanger all those participating in the justice system.

For the reasons described above, a Guidelines sentence will adequately punish the defendant for his serious crime, protect the public and provide both general and specific deterrence. Thus, such a sentence would be sufficient but not greater than necessary to achieve the goals of sentencing.

IV.     Conclusion

        The government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 57 to 71 months' incarceration.

                        Respectfully submitted,

                        BREON PEACE
                        United States Attorney

By:    /s/ Andrés Palacio
        Andrés Palacio
        Assistant U.S. Attorney
        (718) 254-6215

cc:    Clerk of the Court (by ECF)
        Michael C. Padden, Esq. (by ECF)
        Jennifer Baumann, USPO (by E-mail)